ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
————————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————

No. 24-3077
————————————————

UNITED STATES OF AMERICA,                          Appellee,

    v.

DERREK ARRINGTON,                                   Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————————

JEANINE FERRIS PIRRO
United States Attorney

CHRISELLEN R. KOLB
THOMAS STUTSMAN
\* TIMOTHY R. CAHILL
D.C. Bar #1032630
Assistant United States Attorneys
\* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Timothy.Cahill@usdoj.gov
(202) 252-6829

Cr. No. 00-159 (RCL)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee states as follows:

## Parties and Amici

The parties to this appeal are appellant, Derrek Arrington, and appellee, the United States of America. There are no amici.

## Rulings Under Review

This is an appeal from a judgment by the Honorable Royce Lamberth resentencing Arrington to 240 months' incarceration on May 30, 2024, after Arrington's original sentence was vacated based on his motion pursuant to 28 U.S.C. § 2255 (Appendix (A) 209-16, 255-60). Arrington asserts that the district court committed procedural errors and imposed a substantively unreasonable sentence, and he seeks a remand for resentencing.

## Related Cases

This Court affirmed Arrington's convictions on direct appeal in No. 01-3059. *See United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002).

This case was also previously before this Court in connection with Arrington's multiple unrelated post-conviction motions, including: No. 08-

3005 (dismissed after the denial of a certificate of appealability); No. 09-3078 (district court affirmed); and No. 11-3007 (motion to withdraw appeal granted). In No. 12-3073, this Court dismissed some aspects of Arrington's appeal and otherwise affirmed the district court's denial of his motions pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Crim. P. 36. *See United States v. Arrington*, 763 F.3d 17 (D.C. Cir. 2014).

In No. 16-3020, Arrington petitioned for leave to file a second or successive § 2255 motion to pursue a claim based upon *Johnson v. United States,* 576 U.S. 591 (2015), which this Court granted.

On July 13, 2021, this Court reversed the district court's denial of Arrington's *Johnson*-based § 2255 motion as untimely and remanded the case for further proceedings. *See United States v. Arrington*, 4 F.4th 162 (D.C. Cir. 2021). The district court subsequently granted Arrington's § 2255 motion, which led to the resentencing that is the subject of this appeal.

Appellee is unaware of any other related cases.

# STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE ............................................. 1

    Arrington's Offenses, Convictions, and Original Sentencing ............ 4

    Arrington's § 2255 Motion Based on *Johnson* .................................... 7

    The District Court's Resentencing ..................................................... 7

SUMMARY OF ARGUMENT ....................................................... 12

ARGUMENT .............................................................................. 15

  I.   Standard of Review and Legal Principles .................................. 15

  II.  The District Court Did Not Plainly Err When It Declined to
       Afford Weight to Arrington's Post-Sentencing Rehabilitation
       in Light of the Unusual Circumstances of This Case. ................. 18

      A.   Additional Background......................................................... 18

      B.   Discussion ............................................................................ 21

  III. The District Court Did Not Abuse Its Discretion by Relying
       on Arrington's Attempted Murder of Officer Daniels to
       Justify an Upward Variance. ...................................................... 27

      A.   Additional Background......................................................... 27

      B.   Discussion ............................................................................ 29

  IV. The District Court Did Not Abuse Its Discretion by Relying
       on Arrington's Illegal Possession of a Stolen Firearm to
       Justify an Upward Variance......................................................... 32

      A.   Additional Background......................................................... 32

      B.   Discussion ............................................................................ 34

  V.   The District Court Did Not Abuse Its Discretion by
       Imposing a Substantively Unreasonable Sentence. ................... 37

CONCLUSION............................................................................. 41

# TABLE OF AUTHORITIES*

**<u>Cases</u>**

*Gall v. United States*, 552 U.S. 38 (2007)............................................15, 39

*Hardy v. United States*, 578 A.2d 178 (D.C. 1990) ............................19, 24

*Johnson v. United States*, 529 U.S. 694 (2000)..................................19, 24

*Johnson v. United States,* 576 U.S. 591 (2015)......................................2, 7

*Pepper v. United States*, 562 U.S. 476 (2011) ..............................22, 23, 25

*Tapia v. United States*, 564 U.S. 319 (2011) ...........................................22

*United States v. Arrington*, 4 F.4th 162 (D.C. Cir. 2021).....................3, 6

*United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002) ....................2, 4

*United States v. Arrington*, 2019 WL 4644381 (D.D.C. Sept. 24, 2019)......3

*United States v. Axline*, 93 F.4th 1002 (6th Cir. 2024) ..........................35

*United States v. Baker*, 2022 WL 16557965 (2d Cir. Nov. 1, 2022)........23

*United States v. Blackson*, 709 F.3d 36 (D.C. Cir. 2013) ........................25

* *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) ......17, 38, 40

*United States v. Garza*, 127 F.4th 954 (5th Cir. 2025)...........................11

*United States v. Head*, 817 F.3d 354 (D.C. Cir. 2016).............................24

*United States v. Hunter*, 809 F.3d 677 (D.C. Cir. 2014)..........................26

* *United States v. Iracks*, 106 F.4th 61 (D.C. Cir. 2024)
.............................................. 16, 17, 18, 22, 30, 32, 36, 37, 38, 40

* *United States v. Kenny*, 846 F.3d 373 (D.C. Cir. 2017) ....................25, 26

*United States v. Lawrence*, 662 F.3d 551 (D.C. Cir. 2011).....................15

---

\* Authorities upon which we chiefly rely are marked with asterisks.

v

*United States v. Lawson*, 494 F.3d 1046 (D.C. Cir. 2007)........................ 29

*United States v. Lente*, 759 F.3d 1149 (10th Cir. 2014) .......................... 35

\* *United States v. Miller*, 35 F.4th 807 (D.C. Cir. 2022).......... 17, 30, 34, 38

*United States v. Parker*, 762 F.3d 801 (8th Cir. 2014) ............................ 23

\* *United States v. Pyles*, 862 F.3d 82 (D.C. Cir. 2017) .................. 16, 17, 21

*United States v. Ransom*, 756 F.3d 770 (D.C. Cir. 2014) ........................ 16

*United States v. Rhodes*, 145 F.3d 1375 (D.C. Cir. 1998) ................. 22, 25

*United States v. Smith*, 222 F. App'x 186 (3rd Cir. Mar. 14, 2007) ....... 23

\* *United States v. Williamson*, 903 F.3d 124 (D.C. Cir. 2018) ........... 18, 39

**Statutes**

18 U.S.C. § 111(a) .................................................................................. 1

18 U.S.C. § 111(b) .............................................................................. 1, 5

18 U.S.C. § 922(g)(1) ............................................................................. 2

18 U.S.C. § 924(a)(8) ............................................................................. 5

18 U.S.C. § 924(c)(1)(A)(iii) .................................................................. 1

18 U.S.C. § 1113 .................................................................................. 39

18 U.S.C. § 1114 .............................................................................. 1, 39

18 U.S.C. § 3551 .................................................................................. 22

18 U.S.C. § 3553(a) .................................................. 15, 17, 19, 22, 23, 40

18 U.S.C. § 3553(c)(2) ......................................................................... 15

28 U.S.C. § 2255 ............................................................................ 2, 3, 7

**Rules**

U.S.S.G. § 2K2.1(b)(4)........................................................................ 36

# ISSUES PRESENTED

I.     Whether the district court plainly erred when it declined to afford weight to Arrington's evidence of post-sentencing rehabilitation, where Arrington had already completed serving the statutory maximum term of incarceration six years before the resentencing hearing.

II.    Whether the district court abused its discretion by imposing an upward sentencing variance based upon Arrington's attempt to murder a police officer by shooting him in the face in an effort to evade arrest, where the Sentencing Guidelines did not fully account for this conduct.

III.   Whether the district court abused its discretion by relying on Arrington's illegal possession of a stolen firearm to justify an upward sentencing variance, where the Guidelines grouping rules meant that this conduct was not reflected in the sentencing-range calculations.

IV.    Whether the district court abused its discretion by imposing a substantively unreasonable sentence, where its upward variance from the Sentencing Guidelines range was based on significant justifications, and its thorough and detailed explanation for the variance rested on the kind of defendant-specific determinations within the special competence of a sentencing court.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

No. 24-3077

—————————————

UNITED STATES OF AMERICA,                          Appellee,

v.

DERREK ARRINGTON,                                Appellant.

—————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————

BRIEF FOR APPELLEE

—————————————

## COUNTERSTATEMENT OF THE CASE

On May 10, 2000, Arrington was charged by indictment with
(i) assaulting, resisting or impeding a federal officer with a dangerous
weapon (automobile), in violation of 18 U.S.C. §§ 111(a) and (b);
(ii) attempted murder of a federal officer "by shooting him in the face with
a pistol," in violation of 18 U.S.C. § 1114; (iii) discharging a firearm during
a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and

(iv) unlawful possession of a firearm by a convicted felon (FIP), in violation of 18 U.S.C. § 922(g)(1) (Appendix (A) 28-30).

On September 18, 2000, after a jury trial before the Honorable James Robertson, Arrington was found guilty of assault with a dangerous weapon (automobile) (Count 1) and FIP (Count 4) (A8). The jury hung on the charges of attempted murder (Count 2) and discharging a firearm during a crime of violence (Count 3), and the district court declared a mistrial as to those counts (A9). Those charges were retried twice, and both retrials ended in mistrials after jury deadlocks (A9-12). The deadlocked counts were ultimately dismissed on the government's motion (A13).

On May 1, 2001, Judge Robertson sentenced Arrington to an aggregate term of 240 months' incarceration (A13, A170). This Court affirmed Arrington's convictions on direct appeal. *See United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002).

On June 15, 2016, this Court granted Arrington's petition for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255 to pursue a claim based on *Johnson v. United States,* 576 U.S. 591 (2015) (A21, A37).[1]

---

[1] Arrington had previously filed multiple unsuccessful post-conviction motions that are not relevant to this appeal (A14-21, A34).

Arrington's § 2255 motion claimed that, in light of *Johnson*, his prior felony convictions for armed robbery no longer qualified as "crimes of violence," and thus he should have been subject to a lower sentencing range under the United States Sentencing Guidelines (U.S.S.G.) (A37-38). On May 24, 2018, while Arrington's § 2255 motion was still pending, he completed serving his 240-month term of incarceration in this case (A66, A79).[2]

On September 24, 2019, the Honorable Royce Lamberth denied Arrington's § 2255 motion as untimely. *See United States v. Arrington*, 2019 WL 4644381 (D.D.C. Sept. 24, 2019). Arrington appealed that ruling (A23). On July 13, 2021, this Court reversed the district court's timeliness ruling and remanded the case for further proceedings. *See United States v. Arrington*, 4 F.4th 162 (D.C. Cir. 2021).

On February 5, 2024, Judge Lamberth issued an order granting Arrington's § 2255 motion on the merits and vacating his original sentence (A31-60). At a resentencing hearing on May 30, 2024, Judge Lamberth imposed an aggregate term of 240 months' incarceration, the same length as the sentence imposed at Arrington's original sentencing (A170, A255-

---

[2] Arrington remains incarcerated on a parole-revocation sentence for an unrelated armed-robbery conviction in D.C. Superior Court (A80-82).

60). In issuing this sentence, Judge Lamberth granted an upward variance from the sentencing range of 140 to 175 months that he calculated under the Sentencing Guidelines (Sealed Appended (SA) 72-76). On June 3, 2024, Arrington filed a timely notice of appeal (A217).

## Arrington's Offenses, Convictions, and Original Sentencing

On April 13, 2000, three United States Park Police officers stopped Arrington's car because it lacked a front license plate. *See Arrington*, 309 F.3d at 42. The officers instructed Arrington to get out of the car after one of them saw suspected drugs on the floorboard. *See id.* Arrington refused and instead reached for the gear shift. *See id.* When the officers reached inside the car in attempt to stop him, Arrington sped away, dragging one of the officers (Jonathan Daniels) at least 50 feet through an intersection. *See id.* at 42-43.

Arrington crashed his car during the ensuing high-speed chase, and he continued to flee on foot. *See Arrington*, 309 F.3d at 43. After Officer Daniels extricated himself from Arrington's car, he caught up with Arrington as he tried to scale a fence (A32). Arrington produced a stolen

handgun, aimed it at Officer Daniels, and shot him in the face (*id*.).[3] In the meantime, the other officers apprehended Arrington and subdued him (*id*.).

Arrington was convicted at his first trial of assault with a dangerous weapon (automobile) and FIP (A8). However, the jurors in that trial, and in two retrials, were unable to reach unanimous verdicts on the charges of attempted murder and discharging a firearm during a crime of violence (A9-12). Those charges were ultimately dismissed (A13).

On May 1, 2001, Judge Robertson held a sentencing hearing (A13, A153-73). The district court determined that Arrington's sentencing range under the then-mandatory Guidelines was 210 to 262 months of incarceration, which was capped at 240 months due to the 10-year statutory maximum that applied to each conviction (A154, A160).[4] This range was based, in part, on the district court's determination that Arrington had two

---

[3] The gunshot wound severed one of the nerves in Officer Daniels's face, requiring surgery to restore movement and causing permanent injuries, including damage to his left eye and partial facial paralysis (A32, A157).

[4] In the years since Arrington committed his offenses, the statutory maximum penalties for these offenses have been amended to 20 years for assaulting a federal officer with a dangerous weapon, *see* 18 U.S.C. § 111(b) (2021), and 15 years for FIP, *see* 18 U.S.C. § 924(a)(8) (2022). These amendments played no role in Arrington's original sentencing or in the resentencing that is the subject of this appeal (SA39).

prior felony convictions for "crimes of violence," which subjected him to U.S.S.G. enhancements that increased his applicable Guidelines range. *See Arrington*, 4 F.4th at 164.

At sentencing, Judge Robertson applied an increase to Arrington's offense level for Count 1 (assault with a dangerous weapon) based on "the real bodily injury that Officer Daniels sustained, which was a gunshot wound to the face" that caused "permanent or life-threatening bodily injury" (A156-57). Judge Robertson acknowledged that no jury had found Arrington guilty beyond a reasonable doubt of intentionally shooting Daniels (A160). However, "applying the preponderance of the evidence standard," Judge Robertson found the shooting was properly considered "relevant conduct" for purposes of sentencing because Arrington shot Daniels while "doing anything he could to avoid being caught and prosecuted for what he had already done" (A164-65).

Judge Robertson sentenced Arrington to an aggregate term of 240 months' incarceration, which was the top of the Guidelines range as limited by the statutory maximum (A13, A170). *See also Arrington*, 4 F.4th at 164. In declining to apply certain upward departures requested by the government, Judge Robertson explained that Arrington was

"eligible for the statutory maximum which seem[ed] to adequately represent the seriousness of this crime" (A160).

## Arrington's § 2255 Motion Based on *Johnson*

On February 5, 2024, on remand from this Court, Judge Lamberth issued an order granting Arrington's § 2255 motion based on *Johnson* (A31-60). Judge Lamberth concluded that, under *Johnson*, at least one of Arrington's prior armed-robbery convictions no longer qualified as a "crime of violence" for purposes of the U.S.S.G., and Arrington thus should not have been subject to certain enhancements that increased his Sentencing Guidelines range at his original sentencing (A58-59). Judge Lamberth vacated Arrington's sentence and ordered a resentencing hearing (A59-60).

## The District Court's Resentencing

On April 15, 2024, the Probation Office issued a draft Presentence Investigation Report (PSR), which applied the 2000 U.S.S.G. and calculated Arrington's sentencing range as 130 to 162 months' incarceration (SR11, SR26). On April 30, 2024, the government submitted proposed revisions to the draft PSR (SA33-37). The government's primary contention was that

the offense level for Count 1 (assault with a dangerous weapon) should be subject to a six-level increase, rather than a mere two-level increase, based on the severity of the injuries suffered by Officer Daniels (SA33-34). The government noted that Judge Robertson imposed a similar enhancement at Arrington's original sentencing after finding by a preponderance of the evidence that Daniels's permanent nerve damage and paralysis were caused by Arrington's "relevant conduct"—that is, shooting Daniels in the face while attempting to evade arrest (SA34-35). The government also proposed a four-level increase to the offense level for Count 4 (FIP) because Arrington used the illegally possessed stolen firearm in connection with another felony offense—again, shooting Daniels (SA35-36).

On May 13, 2024, the Probation Office issued a revised PSR, which largely adopted the government's proposals and recalculated Arrington's Guidelines range as 168 to 210 months (SA48-49, SA63). On May 20, 2024, Arrington filed a sentencing memorandum that set forth objections to the revised PSR (A101-41). As relevant here, Arrington argued that if the offense levels for Counts 1 and 4 were enhanced based on overlapping relevant conduct—specifically, the shooting of Officer Daniels and his resulting injuries—those counts must be treated as a single offense "group"

8

under the rules for closely related counts (A107-12). The revised PSR incorrectly added a "multiple count adjustment" that should apply only for multiple convictions that were not part of the same offense "group" (*id.*).

At the resentencing hearing on May 30, 2024, Judge Lamberth agreed with the government's proposed offense-level enhancements but also agreed with Arrington's objection based on the Guidelines grouping rules (A232-35). Judge Lamberth found, based on his review of the original sentencing hearing and the record, "by a preponderance of the evidence that [Arrington] did willfully shoot Officer Daniels in the face while [he was] trying to evade capture" (A256). Judge Lamberth thus treated the shooting as relevant conduct for sentencing purposes, and he applied offense-level enhancements to Count 1 (based on the severe injuries that Officer Daniels suffered) and Count 4 (based on Arrington's use of the illegal firearm to shoot Daniels) (A233-34).[5] Judge Lamberth also, however, applied the grouping rules in the manner Arrington proposed and removed the PSR's "multiple count adjustment" (A233-34). The district court instead determined Arrington's total offense level based solely on Count 1, which

---

[5] Arrington does not challenge Judge Lamberth's relevant-conduct finding for the shooting or the related offense-level enhancements.

had a higher adjusted offense level than Count 4 and thus had the highest offense level in the offense "group" (A234). As a result, Judge Lamberth calculated Arrington's final Guidelines sentencing range as 140 to 175 months' incarceration (A235).[6]

After hearing arguments from the parties, Judge Lamberth granted the government's request for an upward variance from the Guidelines range to a sentence of 240 months' incarceration (A70-76, A237-44, A255-60). This was the same length as the term of incarceration imposed at Arrington's original sentencing, which Arrington had already completed serving six years earlier (A66, A79, A170). In explaining the bases for this variance, Judge Lamberth identified three reasons why Arrington's Guidelines range did not fully account for his conduct in this case and his criminal history (SA75-76, A257-58).

First, a variance was "needed to capture the wrongfulness of [Arrington's] attempted murder" of Officer Daniels (SA75). Although Daniels's "grave injuries [were] accounted for by the Guidelines . . . the moral depravity of this independent conduct [was] not" (*id.*). Judge

---

[6] Arrington does not challenge Judge Lamberth's Guidelines calculations.

Lamberth found that the high end of the Guidelines range "would not provide adequate penalty for the heinous act [of] coming within a millimeter of ending the officer's life by . . . shoot[ing] him in the face" (A257). Judge Lamberth stated that this factor alone justified "a variance upward . . . to the maximum sentence under the statute[s]" (*id.*).

Second, Arrington's criminal-history score under the Guidelines did not "fully reflect[ ]" his "history of violent crime" (A257). Specifically, in 1999, before Arrington committed the instant offenses, he committed an armed carjacking in Florida during which he "pointed [his] firearm directly at the victim's stomach" (*id.*). Because Arrington pleaded guilty to that crime after his original sentencing hearing in this case, the PSR did not include that conviction in his criminal-history score (SA76).[7]

---

[7] As Arrington notes (at 34 n.8), the PSR erred by omitting this conviction from his criminal-history score. Although this Court does not appear to have ruled directly on this issue, the "majority of circuits" interpret the Guidelines as allowing any sentence "imposed prior to resentencing" to be included in a defendant's criminal-history score. *United States v. Garza*, 127 F.4th 954, 956 (5th Cir. 2025) (collecting cases). Neither party sought to correct this omission in the district-court proceedings, however, and Arrington (at 19) does not challenge Judge Lamberth's reliance on this factor to support imposing an upward variance at resentencing.

Third, a variance was "needed to specifically account for the independently wrongful conduct of illegally possessing a stolen firearm" (SA76). Judge Lamberth explained that Arrington's possession of a gun as a convicted felon was "a serious offense in itself and all the more so because the gun was stolen" (A258). Although Arrington's offense level for Count 4 had been increased by two levels because the firearm was stolen, Count 4 and its related enhancements "effectively dropped out of the sentencing calculation" as result of the grouping rules (*id.*). Thus, Arrington's final Guidelines range did not specifically "account for [his] illicit possession of a stolen firearm" (*id.*).

## SUMMARY OF ARGUMENT

The district court's 240-month sentence was not based on significant procedural errors, and it was not substantively unreasonable.

First, the district court did not plainly err when it declined to afford weight to Arrington's post-sentencing rehabilitation in light of the unusual circumstances of this case. While a district court is required to consider all non-frivolous reasons asserted for an alternative sentence, it need not find that every sentencing factor is relevant in every case. Arrington's claim that his purported rehabilitation made it unnecessary for him to serve

additional time on his sentence had no relevance where he had completed serving the statutory maximum term six years before the resentencing hearing. Furthermore, in the context of the parties' arguments on this issue, Judge Lamberth's ambiguous statements should not be interpreted as reflecting a mistaken belief that he was categorically barred from considering post-sentencing rehabilitation at the resentencing.

Second, the district court did not abuse its discretion by relying on Arrington's attempted murder of Officer Daniels to justify an upward variance. Contrary to Arrington's claim, the offense-level enhancement based on the extent of Daniels's injuries did not fully account for Arrington's attempt to murder Daniels. Arrington's final Guidelines range accounted only for his commission of a vehicular assault that resulted in life-threatening injuries; it did not reflect that Arrington caused those injuries by willfully shooting a police officer in the face at close range while attempting to evade arrest. The district court acted within its discretion in finding that the "wrongfulness" and "moral depravity" of Arrington's attempt to murder Daniels warranted an upward variance (SA75).

Third, the district court did not abuse its discretion by relying on Arrington's illegal possession of a stolen firearm to justify an upward

variance. As a result of the grouping rules, Arrington's FIP offense and its related enhancements did not play any role in his Guidelines calculations. The district court reasonably determined that the resulting sentencing range failed to fully account for Arrington's independently wrongful conduct of illegally possessing a stolen firearm, which was a different act with different harms and victims compared with his vehicular assault. This rationale carried particular force with respect to the fact that Arrington's gun was stolen, an aggravating factor that otherwise would not have counted at all in his Guidelines range.

Fourth, the district court did not abuse its discretion by imposing a substantively unreasonable sentence. While a major departure from the Guidelines must be supported by a more significant justification than a minor one, Arrington's attempted murder of a police officer while trying to evade arrest satisfies that standard. The district court also permissibly relied on Arrington's illegal possession of a stolen gun and his unaccounted-for Florida carjacking conviction, the latter of which Arrington concedes was a proper basis for a variance. Given the circumstances of this case, the district court did not impose such an unreasonably high sentence to warrant reversal for substantive unreasonableness.

# ARGUMENT

## I. Standard of Review and Legal Principles

This Court reviews sentencing challenges "under a two-step analysis: first to ensure that the district court committed no significant procedural error . . . and second, to ensure, assuming that the district court's sentencing decision is procedurally sound, the sentence is substantively reasonable." *United States v. Lawrence*, 662 F.3d 551, 556 (D.C. Cir. 2011) (quotation marks and alterations omitted).

At the first step, this Court considers alleged significant procedural errors, such as "failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court has discretion to impose a sentence outside the Guidelines range based upon the § 3553(a) factors but must state its "specific reason" for doing so both orally and in the statement of reasons appended to the judgment. 18 U.S.C. § 3553(c)(2). To justify an upward variance, the district court must "find that the defendant's conduct was more harmful or egregious than the typical case represented by the

relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation does not fully account for the described criminal conduct." *United States v. Iracks*, 106 F.4th 61, 67-68 (D.C. Cir. 2024) (quotation marks omitted). "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines" if "the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (quotation marks omitted).

A preserved claim of procedural sentencing error is reviewed for abuse of discretion. *See United States v. Pyles*, 862 F.3d 82, 86 (D.C. Cir. 2017). Where an appellant failed to specifically object to a procedural error in the district court, however, this Court undertakes only plain-error review. *See id*. This includes claims based on the district court's "alleged non-consideration" of a "non-frivolous mitigation argument." *Id*. at 84. Under the plain-error standard, an appellant must demonstrate that the district court committed an "obvious" or "clear" error that "affect[ed] his substantial rights" (meaning it was "prejudicial"), and that "seriously

impact[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 86 (quotation marks omitted).

If this Court determines that "there is no significant procedural error," it "go[es] on to examine whether the district court imposed a substantively reasonable sentence." *Iracks*, 106 F.4th at 66. This assessment is based on "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id*. (quotation marks omitted). However, because the Guidelines are "advisory only," this Court "do[es] not require a heightened showing of 'reasonableness' if a district court imposes an above-Guidelines sentence." *United States v. Miller*, 35 F.4th 807, 814 (D.C. Cir. 2022). *See also United States v. Gardellini*, 545 F.3d 1089, 1093-94 (D.C. Cir. 2008) ("[O]ur substantive reasonableness review is deferential and not tied to the Guidelines alone.").

A challenge to the substantive reasonableness of a sentence is always reviewed for abuse of discretion. *See Miller*, 35 F.4th at 814. The fact that this Court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Iracks*, 106 F.4th at 66 (quotation marks omitted). Rather, this Court "must give due deference to the district court's decision that the § 3553(a) factors, on a

whole, justify the extent of the variance." *Id.* (quotation marks omitted).

Thus, "[i]t will be the unusual case when an appeals court can plausibly say that a sentence is substantively unreasonable in light of all the circumstances." *United States v. Williamson*, 903 F.3d 124, 136 (D.C. Cir. 2018) (quotation marks omitted).

## II. The District Court Did Not Plainly Err When It Declined to Afford Weight to Arrington's Post-Sentencing Rehabilitation in Light of the Unusual Circumstances of This Case.

### A. Additional Background

Before the district court's resentencing, Arrington argued that his (already completed) term of incarceration should be reduced based on his "incredible growth and maturity during imprisonment" (A120-32). Arrington specifically pointed to his accomplishments in the Challenge Program and BRAVE Program—which had occurred "in the last four [years]"—as "say[ing] something about his rehabilitation" (A246). Although Arrington acknowledged that his incarceration term in this case was over, he argued that he was still serving a separate parole-revocation sentence

"for [his] conduct in this case,"[8] and the court should reduce his sentence below time-served to expedite his release from that sentence (A248).

The government argued that because Arrington had "already completed the statutory maximum sentence in this case," some of the sentencing factors in 18 U.S.C. § 3553(a) had "relatively little bearing on what sentence the Court should impose today" (A241). The government noted that the accomplishments Arrington relied on most heavily—his completion of the Challenge Program in 2021 and his selection as a mentor in the BRAVE Program in 2023—occurred after his term of incarceration in this case was over (A242). The government argued it would be "illogical" to rely on Arrington's purported lack of "future dangerousness" based on these recent accomplishments to reduce an incarceration term he "completed six years ago" (A242).

---

[8] Arrington (at 37) repeats this contention on appeal, stating that he is "serv[ing] an additional 11 years of parole revocation time based on the very same conduct at issue here." As discussed below, this misconstrues the nature of a parole-revocation sentence, which is a continuation of a defendant's punishment for his original offense—not a punishment for the conduct that resulted in revocation. *See Johnson v. United States*, 529 U.S. 694, 701 (2000); *Hardy v. United States*, 578 A.2d 178, 181 (D.C. 1990).

The government also disputed that "expediting [Arrington's] release in an unrelated state criminal case" justified a reduction of his already-completed incarceration term in this case (A243). To the extent that Arrington believed his rehabilitation supported an early release from his Superior-Court sentence, the granting of such a remedy would be the proper province of "either the U.S. Parole Commission or the local D.C. courts" (A243). As the government pointed out, Arrington's recent motion for compassionate release in Superior Court had been denied in October 2022, based in part on the court finding that Arrington failed to show he was no longer a danger to the community (A75 n.6, A95-101).

Judge Lamberth observed that Arrington appeared to be "on another path now," and commended his recent "progress" as "a good sign that [he was] going to come out of all this a different person with some real hope for the future" (A259). In imposing a 240-month term of incarceration, however, the district court declined to afford weight to Arrington's post-sentencing rehabilitation (*id.*). Judge Lamberth stated, "I'm not sentencing the guy that is appearing before me here today. I'm doing what I think would have been the sentence Judge Robertson would have imposed were you there then. . . . I have to sentence you with what I have today." (*Id.*).

Judge Lamberth asked if there were objections at the end of the resentencing hearing, and Arrington's counsel objected that the court's upward variance was improperly based on his shooting of Officer Daniels and his illegal possession of a stolen firearm (A262-63). Arrington did not, however, object that the district court had improperly failed to consider his post-sentencing rehabilitation (*id*.).

## B. Discussion

As Arrington acknowledges (at 23), his claim that Judge Lamberth improperly refused to consider post-sentencing rehabilitation is subject to plain-error review. Despite having "ample opportunity to object," Arrington never contended that Judge Lamberth failed to give "fair consideration" to his argument on this ground. *Pyles*, 862 F.3d at 86-87. Simply stating a "non-frivolous mitigation argument on the record" does not preserve a claim that the district court procedurally erred by failing to consider it. *Id*. Rather, a defendant has "an affirmative duty to object if [he believes] that the argument [was not] given fair consideration." *Id*. Judge Lamberth's decision to decline to afford weight to Arrington's post-sentencing rehabilitation under the unusual circumstances of this case was not error, let alone plain error.

When a defendant is resentenced after his original sentence is vacated, "a district court may consider evidence of [the] defendant's rehabilitation since his prior sentencing." *Pepper v. United States*, 562 U.S. 476, 490 (2011). Such evidence "may, in appropriate cases" support a reduced sentence because "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." *Id.* at 490-91. Thus, there is no "categorical bar on the consideration of postsentencing rehabilitation evidence." *Id.* at 491. *See also United States v. Rhodes*, 145 F.3d 1375, 1382 (D.C. Cir. 1998) (declining to preclude district courts from considering "post-conviction rehabilitation" at resentencing).

Not every sentencing factor, however, is relevant in every case. While the district court is required to "consider all non-frivolous reasons asserted for an alternative sentence," *Iracks*, 106 F.4th at 69 (quotation marks omitted), the court must afford weight to particular sentencing factors only "to the extent that they are applicable in light of all the circumstances of the case," 18 U.S.C. § 3551. *See also Tapia v. United States*, 564 U.S. 319, 325 (2011) (a court must fashion a sentence based on "four considerations— retribution, deterrence, incapacitation, and rehabilitation . . . *to the extent that they are applicable in a given case*") (emphasis added; quotation marks

omitted). Given that "[t]he governing statute specifically acknowledges that some of the § 3553(a) factors may be inapplicable to a given case," appellate courts should not "second-guess the district court's decision to ascribe particular weight to some factors instead of others." *United States v. Baker*, 2022 WL 16557965, at *2 (2d Cir. Nov. 1, 2022). It is thus not error if a district court "ultimately considered certain [§ 3553(a)] factors less relevant or irrelevant to the circumstances of the case." *United States v. Smith*, 222 F. App'x 186, 190 (3rd Cir. Mar. 14, 2007).

Under the unusual circumstances here—where Arrington completed the statutory maximum term of incarceration before he was resentenced—Judge Lamberth did not err by acknowledging Arrington's post-sentencing rehabilitation but declining to afford it weight for imposing a new sentence. *See United States v. Parker*, 762 F.3d 801, 812 (8th Cir. 2014) ("Although *Pepper* clarified a district court *may* consider evidence of a defendant's rehabilitation since his prior sentencing, nothing in *Pepper* requires a district court to reduce—or increase—a sentence based on such evidence.") (emphasis in original; quotation marks omitted). As the government argued in the district court, Arrington's claim that he "does not need to serve more

time" to accomplish the statutory goals of sentencing (A140) had no relevance where Arrington finished "serving time" in this case six years ago.

Nor did the district court err by implicitly rejecting Arrington's claim that his rehabilitation was relevant because he is still serving a Superior Court parole-revocation sentence based on an unrelated armed-robbery conviction. Arrington contends (at 6-7, 37) that his current incarceration pursuant to a parole-revocation sentence is punishment for his "conduct in this case," apparently because his instant federal convictions were the violations that resulted in revocation of his parole in the unrelated Superior Court matter (SA52). This argument misconstrues the nature of a parole-revocation penalty. Parole revocation proceedings are "continuations of the original prosecutions which resulted in . . . parole." *Hardy v. United States*, 578 A.2d 178, 181 (D.C. 1990). Accordingly, a revocation sentence is "not punishment for the violation," but rather "part of the penalty for the initial offense"—which here was Arrington's armed-robbery conviction in Superior Court. *United States v. Head*, 817 F.3d 354, 358 (D.C. Cir. 2016) (quotation marks omitted). *See also Johnson v. United States*, 529 U.S. 694, 701 (2000) ("postrevocation penalties relate to the original offense").

Arrington's claim (at 17-18) that Judge Lamberth ran afoul of *Pepper* by applying a "categorical bar" on the consideration of post-sentencing rehabilitation is also unavailing. It is well-established that "[t]he district court is presumed to know the law and apply it correctly." *United States v. Kenny*, 846 F.3d 373, 376 (D.C. Cir. 2017). This is particularly true where, as here, the legal principle at issue has been "long established in this circuit." *Id.* This Court held that district courts are authorized to consider post-sentencing rehabilitation in appropriate cases in 1998, approximately 13 years before the Supreme Court issued *Pepper*. *See United States v. Blackson*, 709 F.3d 36, 40-41 (D.C. Cir. 2013) (citing *Rhodes*, 145 F.3d at 1377-78).

In the context of the parties' arguments during Arrington's resentencing, Judge Lamberth's ambiguous statements that he was "not sentencing the guy that is appearing before me here today" but was "doing what I think would have been the sentence Judge Robertson would have imposed" (A259) are best interpreted as the court's agreement with the government that post-sentencing rehabilitation was not relevant under the specific circumstances of this case. Judge Lamberth's remarks should not be read as reflecting a mistaken belief that he was categorically barred from

considering post-sentencing rehabilitation during a resentencing. *See Kenny*, 846 F.3d at 376-77 (declining to interpret district court's statement that a sentence "has to be" consecutive as reflecting a mistake of law about the advisory nature of the Guidelines when it was viewed in the context of the entire sentencing hearing). Indeed, in a case on which Arrington relies (at 24), this Court affirmed a resentencing decision by Judge Lamberth after finding that he appropriately considered and addressed an appellant's post-sentencing rehabilitation argument. *See United States v. Hunter*, 809 F.3d 677, 684 (D.C. Cir. 2014).

Furthermore, any possible error by Judge Lamberth on this ground was not clear or obvious given the absence of controlling authority (or any authority of which the government is aware) holding that post-sentencing rehabilitation necessarily weighs in favor of retroactively reducing a term of incarceration when a defendant has completed serving the statutory-maximum term before resentencing occurs.

In addition, Arrington has not demonstrated, as he must on plain-error review, that any error by Judge Lamberth on this ground affected Arrington's substantial rights, or that a failure to correct such an error would seriously affect the fairness, integrity, or public reputation of judicial

proceedings. Judge Lamberth expressly stated at the resentencing hearing that Arrington's attempted murder of Officer Daniels by shooting him in the face justified on its own an upward variance to the statutory maximum sentence (A257). Given that clear statement, Arrington has failed to show a reasonable probability that Judge Lamberth would have imposed a lesser sentence if he had afforded more consideration to Arrington's post-sentencing rehabilitation—especially where Arrington already completed his full term of incarceration in this case, and his most significant examples of rehabilitation occurred after that term was over. To the extent Arrington seeks early release from his armed-robbery parole-revocation sentence based on his purported recent rehabilitation, he may continue to pursue such relief from the Parole Commission or the Superior Court.

### III. The District Court Did Not Abuse Its Discretion by Relying on Arrington's Attempted Murder of Officer Daniels to Justify an Upward Variance.

#### A. Additional Background

As a result of the Guidelines grouping rules, the district court calculated Arrington's total offense level based solely on Count 1 (assault with a dangerous weapon – automobile) and its related enhancements (A234-25). Judge Lamberth imposed a six-level increase to Count 1's offense

level due to the permanent and life-threatening injuries that Officer Daniels suffered from the gunshot wound (A233-34). Arrington's "relevant conduct" included causing those injuries because Judge Lamberth found by a preponderance of the evidence that Arrington "did willfully shoot Officer Daniels in the face while [he was] trying to evade capture" (A256).

At the resentencing hearing, Judge Lamberth explained to Arrington that his attempted murder of Officer Daniels was the primary reason that an upward variance was justified:

> [T]he guidelines are really contemplating that you drug the policeman through the intersection while fleeing from a traffic stop and that caused the debilitating injury, but then you shot the officer in the face. If I merely h[ew]ed to the high end of the guideline range, it would not provide adequate penalty for the heinous act which was coming within a millimeter of ending the officer's life by the shot which I find that you did, in fact, shoot him in the face. I think, then, that there's a variance upward in the guidelines to the maximum sentence under the statute. So . . . because of the gravity of Officer Daniels's injury and the wrongfulness of using the firearm, I will depart and treat the case the same as if [he] wasn't just drug through the intersection, but also you shot Officer Daniels. (A257.)

At the end of the resentencing hearing, Arrington's counsel objected to this basis for a variance, arguing it was improper because "that conduct received a plus six" enhancement to the Count 1 offense level (A263).[9]

In the statement of reasons, Judge Lamberth summarized his reliance on this factor as follows: "[A] variance is needed to capture the wrongfulness of the attempted murder. The victim's grave injuries are accounted for by the Guidelines, but the moral depravity of this independent conduct is not." (SA75.)

## B.   Discussion

Arrington does not challenge Judge Lamberth's finding that his willful shooting of Officer Daniels in the face was relevant conduct for sentencing purposes, nor does he dispute the principle that such relevant conduct is a proper basis for an upward variance from the Guidelines range. *See United States v. Lawson*, 494 F.3d 1046, 1056 (D.C. Cir. 2007) (the district court may sentence a defendant above the top of the Guidelines range based on "conduct for which [the defendant] was charged but on

---

[9] The Court should reject Arrington's suggestion (at 27) that Judge Lamberth's response to this objection—saying, "Right" (A263)—somehow implied agreement about his alleged procedural error. This was a simple acknowledgment that the court understood Arrington's objection.

which the jury deadlocked, provided . . . the court determined by a preponderance of the evidence that he engaged in the conduct"). Rather, Arrington argues (at 1) that Judge Lamberth procedurally erred by imposing a variance based on the shooting because it was "already accounted for by the guidelines." This claim should be rejected as meritless.

Arrington contends (at 26-27) that the district court "double-counted" the shooting because it had already imposed a six-level increase to Count 1's offense level based on Officer Daniels suffering permanent or life-threatening injuries. It is well-established, however, that a district court may base a variance "on factors already taken into account" by the Guidelines, so long as the court explains "how the case before it is one with respect to which the Guidelines do not fully account for those factors." *Miller*, 35 F.4th at 818 (quotation marks omitted). That is precisely what the district court did here.

While the enhancement to Count 1 accounted for Daniels's "grave injuries," which were caused by the gunshot wound, those injuries do not "fully account" for the way in which Arrington's conduct was more "egregious than the typical case represented by the relevant Sentencing Guidelines range." *Iracks*, 106 F.4th at 67-68 (quotation marks omitted).

Arrington's final Guidelines range was based on his conviction for vehicular assault, which meant—as Judge Lamberth explained at the resentencing hearing—that the calculations would have been exactly the same if Daniels had suffered his severe injuries while Arrington dragged him "through the intersection while fleeing from the traffic stop" (A257).[10] Arrington, however, did not merely commit a vehicular assault that resulted in Daniels's life-threatening injuries. He also attempted to murder Daniels by shooting him in the face at close range while trying to evade arrest. The Guidelines did not fully account for the "wrongfulness" and "moral depravity" of that "independent conduct," for which Arrington was not convicted at trial, but which the district court found he willfully committed by a preponderance of the evidence (SA75, A256).

Arrington misconstrues the purpose of a sentencing variance when he asserts (at 27-28) that any defendant convicted of assault with a dangerous weapon who caused permanent, life-threatening injuries must have engaged in similarly "morally depraved" conduct. The Guidelines, by

---

[10] Arrington's contention (at 27) that the district court "revised its rationale" by including this explanation in its statement of reasons is belied by the record. Indeed, Arrington elsewhere (at 14) quotes Judge Lamberth's explanation of the same point at the resentencing hearing.

design, determine offense levels based only on general categories of crimes and enhancements. An upward variance permits a district court to impose a higher sentence where the defendant's specific conduct was in some way "more harmful or egregious" than what is captured by those general categories. *Iracks*, 106 F.4th at 67-68 (quotation marks omitted). In other words, not all "moral depravity" is equal. The district court did not abuse its discretion by determining that Arrington's conduct in this case—which included both a vehicular assault *and* an attempt to murder a police officer by shooting him in the face at close range—was more harmful and egregious than that of a defendant who had *only* committed a vehicular assault that caused similarly severe injuries.

## IV. The District Court Did Not Abuse Its Discretion by Relying on Arrington's Illegal Possession of a Stolen Firearm to Justify an Upward Variance.

### A. Additional Background

In determining Arrington's offense level for Count 4 (FIP), the district court imposed two enhancements: a two-level increase because the firearm was stolen, and a four-level increase based on Arrington's use of the firearm to shoot Daniels (A234). As a result of the Guidelines grouping rules,

however, Arrington's total offense level was based solely on Count 1, which had a higher adjusted offense level than Count 4 (*id.*).

As an additional basis to justify an upward variance, Judge Lamberth relied on Arrington's "illegal use and possession of a stolen firearm" (A258). Judge Lamberth explained that Arrington's possession of a gun as a convicted felon was "a serious offense in itself and all the more so because the gun was stolen" (*id.*). As a result of the grouping rules, however, Count 4 and its related enhancements "effectively dropped out" of the Guidelines calculations (*id.*).

At the end of the resentencing hearing, Arrington's counsel objected, arguing that Count 4 "was not dropped" because "that is how the guidelines recommend treating . . . the related conduct" (A263).

In the statement of reasons, Judge Lamberth elaborated on his rationale for this factor as follows:

> [A] variance is needed to take account of Mr. Arrington's illicit possession of a stolen firearm. The grouping rules explicitly require grouping counts if one "embodies conduct that is treated as a specific offense characteristic" in the other. Possession of a stolen firearm and assault are different acts, with different harms and victims. Here, the Court nevertheless determines that these counts must be grouped to avoid "double counting," against which the Guidelines warn, because both counts are modified by the same related conduct. However, a variance is needed to specifically account for the

independently wrongful conduct of illegally possessing a stolen firearm. (SA76.)

## B.    Discussion

The district court did not abuse its discretion by relying on Arrington's possession of a stolen firearm as a basis for an upward variance.

Arrington argues (at 18-19, 31) that Count 4 did not entirely "drop out" of his Guidelines determination because, without his conviction for that crime, his sentencing range would have been capped at the 120-month statutory maximum for Count 1. While Arrington's observation about the statutory maximum is correct, his claim suffers from the same flaw as his argument about the shooting of Officer Daniels addressed above. The fact that certain conduct has impacted a defendant's Guidelines range in any way does not bar the court from relying on that same conduct to impose a variance if the final sentencing range does "not fully account" for how that aspect of the defendant's conduct was "more harmful or egregious" than what is captured by the Guidelines calculations. *Miller*, 35 F.4th at 818 (quotation marks omitted). The district court did not abuse its discretion by finding that merely increasing the applicable statutory maximum did not "fully account" for Arrington's illegal possession of a stolen firearm as a felon. That is because, as Judge Lamberth accurately explained, nothing in

the Guidelines related to the FIP conviction (its base offense level or its associated enhancements) ultimately played any role in calculating Arrington's final Guidelines range of 140 to 175 months.

Arrington also argues (at 30) that the district court's reliance on this factor was improper because the Guidelines grouping rules are intended to prevent "double-counting" of the same factor or conduct when determining a defendant's sentencing range. The grouping rules, however, are "general rule[s] that cover[ ] a large number of very different crimes," and their application in a particular case is not necessarily based on a "a deliberate, specific choice by the Sentencing Commission." *United States v. Lente*, 759 F.3d 1149, 1162 (10th Cir. 2014). District courts may thus permissibly vary upward if they find that, as applied to a specific set of facts, the grouping rules do "not adequately account for" a defendant's criminal conduct—in other words, scenarios where the goal of avoiding "double counting" has the unintended effect of *undercounting* conduct with independent significance. *Id.* at 1163. *See also United States v. Axline*, 93 F.4th 1002, 1009 (6th Cir. 2024). Judge Lamberth, in the statement of reasons, expressly recognized the goal of "avoiding 'double counting'" (SA76). He further explained, however, that under the facts presented here, those rules resulted in a

Guidelines range that failed "to specifically account for the independently wrongful conduct of illegally possessing a stolen firearm," which was a "different act" "with different harms and victims" as compared with Arrington's vehicular assault (SA76). This was not an abuse of discretion.

Judge Lamberth's rationale carried particular force with respect to the fact that Arrington's firearm was stolen, a factor on which the court placed significant emphasis at the resentencing hearing (A258). A defendant who possesses a stolen firearm will typically face a higher Guidelines range under U.S.S.G. § 2K2.1(b)(4). In this case, however, the grouping rules—which are designed to avoid "double counting"—caused a significant aggravating factor not to be counted at all: Arrington's final Guidelines range would have been identical if his gun had not been stolen. Judge Lamberth did not abuse his discretion in finding that Arrington's conduct of illegally possessing a stolen firearm was therefore "more harmful or egregious" than the Guidelines reflected. *Iracks*, 106 F.4th at 67-68 (quotation marks omitted).

Furthermore, any possible error by the district court on this ground was harmless. Judge Lamberth expressly stated at the resentencing hearing that Arrington intentionally shooting Officer Daniels in the face on

its own justified an upward variance to the statutory maximum sentence (A257). As discussed above in Section III.B, Arrington's attempted murder of Daniels was a permissible basis for an upward variance, and his sentence therefore would have been the same even absent this factor.

## V. The District Court Did Not Abuse Its Discretion by Imposing a Substantively Unreasonable Sentence.

Arrington erroneously conflates his claims of procedural error and substantive unreasonableness because his substantive-reasonableness claim presumes the district court made multiple procedural errors. Arrington identifies no authority for conducting a substantive-reasonableness analysis in this manner. Indeed, this Court has explained that "we go on to examine whether the district court imposed a substantively reasonable sentence" only "[i]f there is no significant procedural error." *Iracks*, 106 F.4th at 67.[11]

---

[11] While the government maintains that Judge Lamberth committed no significant procedural errors, the proper remedy if the Court were to find procedural error would be a remand to the district court for resentencing. In that scenario, there would be no need at this stage to examine the substantive reasonableness of the sentence the district court imposed.

Arrington erroneously bases his substantive-reasonableness claim (at 33-37) on an argument that his Florida conviction for carjacking—which was not counted in his criminal-history score—cannot alone "bear the weight" of the district court's entire upward variance. Judge Lamberth did not, however, vary from the Guidelines based entirely on this Florida conviction. To the contrary, that conviction was one of three justifications for the variance—the most significant of which was Arrington's attempted murder of Officer Daniels (A257-58, SA75-76).

Under a proper analysis of substantive reasonableness, which considers "the totality of circumstances," the district court's 65-month upward variance was not an abuse of discretion. *Iracks*, 106 F.4th at 66. This was not the "unusual case" where the district court imposed "such an unreasonably high or low sentence to warrant reversal for substantive unreasonableness." *Miller*, 35 F.4th at 818 (quotation marks omitted). *See also Gardellini*, 545 F.3d at 1093-94 & n.5 (collecting cases affirming significant variances, including upward variances to more than three-to-four times the Guidelines range). Indeed, as Justice Lamberth reasonably determined, the variance here would have been justified

based solely on Arrington attempting to murder Officer Daniels by shooting him in the face at close range (A257).

While a "major departure" from the Guidelines must "be supported by a more significant justification than a minor one," *Gall*, 552 U.S. at 50, Arrington's attempted murder of a police officer while trying to evade arrest satisfies that standard. *See Williamson*, 903 F.3d at 136 (upward variance to 96 months from 15-to-21-month Guidelines range was not substantively unreasonable where the district court found the offense was "significantly more serious" than the Guidelines reflected based on "the facts and circumstances of the case"). As Judge Lamberth determined, within his discretion as the sentencing judge, the final Guidelines range was based primarily on Arrington's vehicular assault and did not "provide adequate penalty for the heinous act [of] coming within a millimeter of ending the officer's life by . . . shoot[ing] him in the face" (A257). Notably, the crime of attempted murder of a federal officer, for which Arrington was originally charged, is punishable by up to 240 months of incarceration, far beyond the 65-month upward variance imposed here based on the district court's finding that Arrington committed that offense. *See* 18 U.S.C. §§ 1113-14. Other than his erroneous claim that the attempted murder

was already accounted for by the Guidelines, Arrington offers no argument as to why the extent of the 65-month variance impermissibly crossed beyond the bounds of the district court's considerable discretion.

Furthermore, as Judge Lamberth explained at length at the resentencing hearing and in the statement of reasons (A257-58, SA75-76), Arrington's shooting of Officer Daniels was not the only justification for the variance. The district court also permissibly relied on Arrington's illegal possession of a stolen gun and his unaccounted-for Florida carjacking conviction, the latter of which Arrington concedes (at 19) was a proper basis for a variance. Judge Lamberth's thorough and detailed explanations for the variance "rest[ed] on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts, as the Supreme Court has repeatedly emphasized." *Gardellini*, 545 F.3d at 1095. *See also Iracks*, 106 F.4th at 66 (appellate courts "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.").

For all these reasons, based on the totality of the circumstances, the district court did not abuse its discretion by imposing a substantively unreasonable sentence.

# CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the district court should be affirmed.

> Respectfully submitted,
>
> JEANINE FERRIS PIRRO
> United States Attorney
>
> CHRISELLEN R. KOLB
> THOMAS STUTSMAN
> Assistant United States Attorneys
>
> _____/s/_____
> TIMOTHY R. CAHILL
> D.C. Bar #1032630
> Assistant United States Attorney
> 601 D Street, NW, Room 6.232
> Washington, D.C. 20530
> Timothy.Cahill@usdoj.gov
> (202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 8,149 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

_____/s/_____

TIMOTHY R. CAHILL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Lisa B. Wright, Esq., Assistant Federal Public Defender, Lisa_Wright@fd.org, on this 1st day of August, 2025.

_____/s/_____

TIMOTHY R. CAHILL
Assistant United States Attorney